**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY (NEWARK)**

Natan Katserman
21126 Breezy Shore Lane
Richmond, TX 77407

And

Igor Gorbach
147 W. Hoffman Ave
Lindenhurst, NY 11757

Plaintiffs,

vs.

Igor Navahrutski
3 Schindler Drive
Sparta, NJ 07871

Defendant,

**CIVIL ACTION**

**NO.** 21-CV-16531

# VERIFIED COMPLAINT

Plaintiffs, Natan Katserman ("Katserman") and Igor Gorbach ("Gorbach") by and through their undersigned counsel, Alan L. Frank Law Associates, P.C., herein file his Complaint against Defendant Igor Navahrutski ("Navahrutski") and in support thereof avers as follows:

## Parties

1. Plaintiff Katserman is an adult individual who resides and is a citizen of the State of Texas.
2. Plaintiff Gorbach is an adult individual who resides and is a citizen of the State of New York.
3. Defendant Navahrutski is an adult individual who resides and is a citizen of the State of New Jersey.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) because the only Defendant resides in this District.

**Summary**

6. Over the past ten (10) days, Navahrutski has made defamatory and threatening statements to and towards Plaintiffs Katserman and Gorbach and has further attempted to interfere with Plaintiffs' contractual relationships, all in an effort to extort $150,000 from each Plaintiff.

7. The parties involved and identified herein are all connected through the ownership, former ownership, management, operation, and/or affiliation with FedEx delivery routes (commonly referred to as "Runs" or "Team Runs").

8. Navahrutski formally owned four (4) Team Runs, however, upon information and belief, Navahrutski's ownership of the Team Runs was permanently revoked by FedEx several years ago.

9. Plaintiff Katserman is the former sole shareholder of Colonial Valley Transportation, Inc. ("Colonial"), a Pennsylvania entity in the business of operating FedEx delivery routes. Colonial previously acquired Navahrutski's revoked Team Runs

10. On August 2, 2021, Plaintiff Katserman sold Colonial and its routes to Karim Zahriya ("Zahriya"), an individual residing in the State of California. The sale included the routes previously owned by Navahrutski.

11. As part of the Colonial sale, Plaintiffs Katserman and Gorbach were retained by Colonial as managers and consultants to aid the company in its continued operation of the routes.

12. Following the consummation of the sale, Plaintiffs Katserman and Gorbach gave Navahrutski a combined total of $300,000 from the proceeds of the sale. Though no formal agreement was ever in effect, Plaintiffs Katserman and Gorbach had received assistance in the operation of the FedEx delivery routes from Navahrutski and members of his family and wanted to reward Navahrutski for his cooperation and help over the years.

13. Upon information and belief, Navahrutski has a history of financial distress and significant outstanding debts, and, as a result, demanded he be paid an additional $150,000 from each Plaintiff.

14. When Plaintiffs refused to pay, Navahrutski engaged in a series of activities and actions designed to intimidate, extort, and force Plaintiffs to meet Navahrutski's financial demand.

15. Some examples of Navahrutski's behavior include, but are not limited to: 1) contacting Zahriya in attempting to undo and/or harm the Colonial sale; 2) submitting false police reports in New Jersey against Plaintiff Katserman, who resides in Texas; 3) threatening to contact FedEx with fabricated allegations against Plaintiffs and Colonial in an effort to jeopardize their status as approved FedEx delivery route owners and operators; and 4) attempting to unlawfully access Colonial's bank accounts in an effort to divert monies from Colonial to payoff trucks owned by Navahrutski.

16. Navahrutski has enlisted the help of his wife and family to extend threats of blackmail to Plaintiffs and their families.

17. As of the time of this filing, Navahrutski's actions are ongoing.

**Facts**

18. Colonial has been engaged in in the business of the operation of FedEx delivery routes throughout the United States pursuant to an Independent Contractor Agreement with FedEx Ground Package System, Inc. ("FedEx"). Katserman acquired all of Colonial's stocks in 2019.
19. From 2019 through August 2, 2021, Plaintiff Katserman was the sole shareholder of Colonial.
20. Plaintiff Gorbach has been involved in the FedEx delivery route industry for several years.
21. Gorbach often operates as a consultant and/or broker in assisting transportation companies with the leasing and/or acquisition of trucking vehicles and with managing the operation of FedEx delivery routes in accordance with FedEx's technical guidelines and requirements.
22. Defendant Navahrutski is involved in the trucking business and is the owner of several transportation entities, including IS Trucking, Inc. ("IS Trucking").
23. Sometime in 2016, Navahrutski's status as an approved owner of four FedEx Team Runs was permanently revoked, leaving IS Trucking without the ability to utilize and pay off its fourteen (14) leased trucks.
24. Following Navahrutski's revocation, Colonial acquired Navahrutski's revoked Team Runs and transferred the ownership and operation of those routes to Colonial.
25. In 2019, when Katserman acquired Colonial, the acquisition and sale included Navahrutski's revoked Team Runs.
26. Following Katserman's acquisition of Colonial, in an effort to help Navahrutski financially, Katserman agreed to lease IS Trucking's fourteen (14) trucks, and to pay the truck's

monthly lease amounts directly to the Truck's financial lenders, (such as financial institutions like BMO Harris Bank, N.A.).

27. In addition, Colonial agreed to hire Navahrutski's daughter as a consultant and provided her training in the delivery industry.

28. From 2019 to August 2, 2021, in addition to the payments of the leased price for IS Trucking's vehicles, Navahrutski and his daughter were compensated approximately $200,000 for their cooperation and consulting services.

29. On August 2, 2021, Katserman sold his shares of Colonial to Zahriya via Stock Purchase Agreement. The sale included the assumption of Colonial's delivery routes and the option to continue to lease the fourteen vehicles from IS Trucking. *See Colonial Valley Stock Purchase Agreement attached hereto as Exhibit "A"*.

30. In addition, on or around the same time, Zahriya entered into a consulting agreement with Katserman and an assignment and management agreement with Gorbach assist with the day-to-day operations of Colonial and to maintain Colonial's delivery routes.

31. As part of the transaction with Gorbach, Zahriya also acquired seven (7) additional Team Runs previously sold by Colonial to another entity.

32. Following the above transactions, which were sold for a significant price, Plaintiffs Katserman and Gorbach collectively agreed to pay Navahrutski $300,000 as a bonus for the assistance and cooperation Defendant and his family provided during the two (2) year period where Katserman owned Colonial.

33. As a result, Katserman paid Navahrutski $250,000 and Gorbach paid Navahrutski $50,000.

34. The payments were made via wires to a number of Navahrutski's companies, including IS Trucking.

35. Upon information and belief, Navahrutski was dissatisfied with the amount he received and believed that based on the value of the Colonial transactions, he deserved more money.
36. On or around August 26, 2021, Navahrutski contacted Katserman and demanded Katserman pay him $150,000, claiming that Navahrutski should have received 50% of the proceeds of the Colonial transaction.
37. At all times material hereto, Navahrutski is not and was not a shareholder of Colonia.
38. Katserman refused Navahrutski's demands.
39. Following Katserman's refusal, Navahrutski appeared at Gorbach's offices in Philadelphia, PA and demanded that Gorbach also pay Navahrutski $150,000 for any profits Gorbach earned through the Colonial Transaction.
40. When Gorbach refused, Navahrutski made a scene in Gorbach's office before being asked to leave the premises.
41. Following Plaintiffs' refusal to meet Navahrutski's demands, Navahrutski began taking extreme measures in an effort to intimidate Plaintiffs into paying Navahrutski more money.
42. First, Navahrutski contacted his local police department in Sparta, New Jersey and submitted a false report that Katserman was going to physically harm Navahrutski.
43. At all relevant times, Katserman lives in and has been physically located in Richmond, Texas.
44. The police declined to take any action on Navahrutski's report.
45. Next, Navahrutski contacted Zahriya and threatened to lodge false and fabricated reports against Colonial to FedEx, claiming that those reports would result in a revocation of Colonial's FedEx contract and privileges, unless Zahriya convinced Plaintiffs to pay Navahrutski $300,000.

46. Thereafter, on or around September 1, 2021, Navahrutski's wife contacted Katserman's wife and threatened to contact FedEx alleging various fraudulent conduct against Katserman unless Katserman agreed to sit down and negotiate with Navahrutski. The messages were in Russian and claimed that "this is just the beginning." *See September 1, 2021, screenshot text message attached as Exhibit "B"*.

47. Moreover, on September 3, 2021, Katserman learned that Navahrutski attempted to use Colonial's bank accounts to schedule a payoff the entire balance of IS Trucking's vehicles. Colonial was able to stop the transaction before the payment was made.

48. It is believed and therefore averred that Navahrutski, his wife, and his agents, will continue to try to interfere with Colonial's operations and will continue to spread defamatory, false, disparaging, and damaging misinformation in an effort to force Plaintiffs to pay Navahrutski $300,000 or otherwise jeopardize Plaintiffs' personal and business relations.

**Count I- Defamation**

49. The Plaintiffs incorporate by reference the foregoing allegations.

50. The statements at issue have a defamatory character because they falsely accuse the Plaintiffs of engaging in fraudulent behavior; misleading state agencies; and using deceptive practices.

51. Many of the statements are defamatory per se because they accuse the Plaintiffs of acting improperly or committing misconduct with regards to their businesses and business transactions.

52. The recipients of the defamatory statements understood both the defamatory character of the statements and the statements' application to the Plaintiffs.

53. The Defendant acted with knowledge of the statements' falsity or reckless disregard for the statements' falsity.

54. As a result of the Defendant's conduct, the Plaintiffs have and will continue to suffer damages.

**WHEREFORE,** Plaintiffs demands judgment in their favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction prohibiting further defamatory statements and directing the Defendant to retract those complained of in this case, and such other relief as the Court may deem just and proper.

**Count II- Commercial Disparagement**

55. The Plaintiffs incorporate by reference the foregoing allegations.

56. The statements at issue have a commercially disparaging character because they make false allegations about the Plaintiffs' business practices and transactions: alleging that Plaintiffs are engaged in fraudulent activities to FedEx and alleging that Plaintiffs engaged in fraudulent activities in the Colonial transaction – in an effort to either rescind the transaction or intimidate Plaintiffs.

57. Many of the Defendants' statements rise to the level of defamatory per se because they accuse the Plaintiffs of acting improperly or committing misconduct with regards to their businesses and business transactions.

58. The statements were intended to cause financial loss to the Plaintiff, in that their purpose was to disparage the Plaintiffs and allege activities in order to blacklist Plaintiffs from working on FedEx routes and to damage and possibly cause Colonial's purchaser to rescind attempt to rescind the transaction.

59. The recipients of the statements understood both the commercially disparaging character of the statements and the statements' application to the Plaintiffs.

60. The Defendant acted with knowledge of the statements' falsity or reckless disregard for the statements' falsity.

61. As a result of the Defendant's conduct, the Plaintiffs have and continue to suffer damages.

**WHEREFORE,** the Plaintiffs demand judgment in their favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction prohibiting further defamatory and disparaging statements and directing the Defendant to retract those complained of in this case and to further cease and desist any future efforts to interfere with Plaintiffs' business transactions or otherwise harm Plaintiffs, and such other relief as the Court may deem just and proper.

**Count III- Tortious and Intentional Interference with Prospective Economic Advantage**

62. The Plaintiffs incorporate by reference the foregoing allegations.

63. The Defendant's threat of and making of false and malicious statements about Plaintiffs to FedEx and other individuals and/or entities, is designed to interfere with Plaintiffs' prospective economic advantage as Defendant seeks to induce FedEx to revoke Plaintiffs' authorizations under FedEx such that Plaintiffs will be precluded from entering into any future agreements to operate and/or own FedEx routes.

64. The Defendant's actions are intentional and without justification

65. As a result of the malicious actions of Defendant, Plaintiffs have and will continue to suffer damages.

**WHEREFORE,** the Plaintiffs demand judgment in their favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction

prohibiting further defamatory and disparaging statements and directing the Defendant to retract those complained of in this case and to further cease and desist any future efforts to interfere with Plaintiffs' business transactions or otherwise harm Plaintiffs, and such other relief as the Court may deem just and proper.

**Count IV- Tortious and Intentional Interference with Existing Contracts**

66. The Plaintiffs incorporate by reference the foregoing allegations.
67. The Defendant's contacting of Zahriya and publication of false and malicious statements about Plaintiffs were made solely for the purpose of interfering with Plaintiff Katserman's sale of Colonial Valley and Plaintiffs' subsequent management and consulting contracts with Colonial and were designed to either cause Plaintiffs' agreements to be terminated and/or the cause the rescission of the Colonial sale.
68. The Defendant's actions are intentional and without justification
69. As a result of the malicious actions of Defendant, Plaintiffs have and will continue to suffer damages.

**WHEREFORE,** the Plaintiffs demand judgment in their favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction prohibiting further defamatory and disparaging statements and directing the Defendant to retract those complained of in this case and to further cease and desist any future efforts to interfere with Plaintiffs' business transactions or otherwise harm Plaintiffs, and such other relief as the Court may deem just and proper.

Respectfully submitted,

**ALAN L. FRANK LAW ASSOCIATES, P.C.**

*/s/ Jeffrey J. Goldin*
Alan L. Frank, Esquire
Jeffrey J. Goldin, Esquire
135 Old York Road
Jenkintown, PA 19046
(215) 935-1000 - Telephone
(215) 935-1110 – Fax
afrank@alflaw.net
jgoldin@alflaw.net
Attorneys for Plaintiff

Dated: September 3, 2021

**VERIFICATION**

I, Natan Katserman, declare and certify, and in accordance with 28 U.S.C. § 1746, under penalties of perjury that the facts and allegations set forth in the foregoing complaint are true and correct and made to the best of my knowledge.

By: ______________________
Natan Katserman

Executed on September 3, 2021