**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATAN KATSERMAN and IGOR GORBACH,<br><br>   Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>IGOR NAVAHRUTSKI,<br><br>   Defendant/Counterclaim Plaintiff/Joinderclaim Plaintiff,<br><br>v.<br><br>IS TRUCKING, INC.,<br><br>   Joinderclaim Plaintiff,<br><br>v.<br><br>COLONIAL VALLEY TRANSPORTATION, INC., UA LOGISTICS, INC., NLN TRUCKING, INC., GORBACH TRUCKING, INC., and BFX LOGGISTIC CORP.,<br><br>   Third-Party Defendants. | Civil Action No: 21-16531(SDW)(MAH)<br><br>**OPINION**<br><br><br>August 15, 2022 |

**WIGENTON**, District Judge.

  Before this Court are the following motions: Plaintiff/Counterclaim Defendant Natan Katserman ("Katserman") and Joinderclaim Defendant NLN Trucking, Inc.'s ("NLN") Motion to Dismiss Defendant/Counterclaim Plaintiff/Joinderclaim Plaintiff Igor Navahrutski

1

("Navahrutski") and Joinderclaim Plaintiff IS Trucking, Inc.'s ("IS Trucking") Counterclaim/Joinder Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6); and Plaintiff/Counterclaim Defendant Igor Gorbach ("Gorbach") and Third-Party Defendants UA Logistics, Inc. ("UA") and Gorbach Trucking, Inc.'s ("Gorbach Trucking") Motion to Dismiss Navahrutski and IS Trucking's Third-Party Complaint ("TPC") pursuant to Rule 14(a) or Rule 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Katserman and NLN Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; and the Gorbach, UA, and Gorbach Trucking Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND AND PROCEDURAL HISTORY

A. Background

The controversy in this action stems from a dispute regarding the sale of Fed Ex trucking delivery routes ("Runs") between the persons and companies that currently operate or formerly operated the Runs. (*See* D.E. 15 ¶¶ 18–23.) To understand the controversy, it is important to know the parties involved and business relationships therein. Navahrutski is a resident of New Jersey who operates IS Trucking,[1] a Pennsylvania corporation. (*Id.* ¶¶ 1–2.) Katserman is a resident of Texas. (*Id.* ¶ 3.) Katserman owns or formerly owned several businesses, including Colonial Valley Transportation, Inc. ("Colonial"), a Pennsylvania corporation Katserman formerly owned but now is owned by Karim Zahriya ("Zahriya"); NLN, a Pennsylvania corporation Katserman owns; and BFX Loggistic Corporation ("BFX"), a Pennsylvania corporation Katserman sold to Zahriya. (*Id.* ¶¶ 6–9.) Gorbach is a resident of New York. (*Id.* ¶ 4.) Gorbach owns or controls

---

[1] IS Trucking consents to jurisdiction and venue in New Jersey. (*Id.* ¶ 2.)

businesses, including Gorbach Trucking, a New York corporation Gorbach fully owns; and UA, a New York corporation related to Gorbach Trucking, and which Gorbach controls. (*Id.* ¶¶ 10–13.)

Navahrutski had FedEx Runs from 2013 until 2018, when FedEx decided not to renew his contract for the Runs but allowed him to transfer and sell the contract to a third party. (*Id.* ¶¶ 18–19.) In 2018, Navahrutski and Gorbach bought four Runs through Gorbach's business entities. (*Id.* ¶ 20.) In May 2019, Katserman had five unprofitable Runs, and he asked Navahrutski to increase profitability. (*Id.* ¶ 21.) Navahrutski sought to transfer his Runs from Gorbach to Colonial, Katserman's business, but because Navahrutski could not work with FedEx, he entered into an oral agreement with Katserman regarding the ownership and operation of Colonial. (*Id.* ¶¶ 22–23.) The terms of the oral agreement stipulated that Navahrutski and Katserman each contributed four Runs and agreed to operate Colonial and NLN together. (*Id.* ¶ 24.) Navahrutski agreed to manage the business "behind the scenes," to lease the trucks owned by IS Trucking to Colonial and NLN without taking profit, and to contribute any more Runs he acquired. (*Id.* ¶¶ 25–26.) Katserman agreed to "act[] as the face of the entities," "to make Navahrutski a *de facto* fifty percent (50%) owner of Colonial," to pay him a salary, to hire his daughter, to pay him or his "companies approximately half of Colonial's profits," and to give him fifty percent (50%) of the proceeds of sale of any transactions involving the entities and FedEx Runs. (*Id.* ¶¶ 27–28.)

After the parties entered the oral agreement, Navahrutski and Katserman each began to receive profits every week from the businesses, and in late 2019 or early 2020, an investor helped NLN purchase two Runs and Navahrutski forgave a debt in exchange for another Run. (*Id.* ¶¶ 30–33.) Colonial and NLN soon grew from eight (8) Runs to fifteen (15) Runs. (*Id.* ¶ 34.)

In the summer of 2020, the parties agreed that Katserman would receive additional pay each week because he was performing more work, but the profit divide remained at fifty percent (50%) to each party. (*Id.* ¶¶ 35–37.)

At the end of 2020, due to impacts to the business from COVID-19, Katserman and Navahrutski agreed to sell some Runs. (*Id.* ¶¶ 38–39.) Gorbach initially expressed interest in purchasing four (4) Runs, but eventually Zahriya sought to buy all fifteen (15) Runs. (*Id.* ¶ 40.) Katserman and Gorbach planned to sell Colonial and several NLN Runs to Zahriya for more than $3,300,000. (*Id.* ¶ 42.) They also sought to "divert the proceeds of the sale to themselves and their related entities, including but not limited to BFX, [Gorbach Trucking], and UA," without considering the terms of the oral agreement between Navahrutski and Katserman, and despite the fact that Gorbach had "no ownership interest or other claim to receive any of the proceeds . . . from the sale." (*Id.*)

Katserman and Gorbach represented to Navahrutski that they sold Colonial to Zahriya for $900,000 and gave Navahrutski $300,000 from the proceeds of the sale. (*Id.* ¶¶ 43–44.) There were additional "Side Agreements" between Katserman and Gorbach and Zahriya, however, which totaled $3,300,000, when factoring in the main agreement. (*Id.* ¶¶ 45–47.) The side agreements included one in which "Zahriya wired . . . $1,300,000 to an escrow account of Colonial and NLN," and "Colonial and NLN transferred '[five (5)] dedicated and [four (4)] unassigned runs' to BFX in exchange for $1,080,000." (*Id.* ¶¶ 48–49.) The remaining funds were dispersed to Gorbach Trucking and UA, and those companies paid $50,000 to NLN to buy two (2) Runs and pay commission, broker, and attorney fees. (*Id.* ¶ 50.)

Gorbach Trucking also "inserted itself as an 'intermediate institute' between BFX and Zahriya in exchange for" payment from five (5) Runs. (*Id.* ¶ 53.) Additionally, Gorbach Trucking

4

and Katserman agreed that "Colonial would sell nine (9) [R]uns and all shares of Colonial to Zahriya for . . . $2,000,000, of which Katserman would receive $900,000 and Gorbach Trucking would receive $1,100,000." (*Id.* ¶¶ 54–55.) Gorbach sent a commission agreement to Navahrutski on July16, 2021, and sent various unexecuted drafts of side agreements involving Colonial, Gorbach, Gorbach Trucking, Katserman, Zahriya, and BFX to Navahrutski on July 27, 2021. (*Id.* 57–70.)

After the transactions occurred, on August 16, 2021, "Katserman transferred [$250,000]—[less] than ten percent (10%) of the transaction—to Navahrutski" and claimed it was a bonus for helping Katserman with Colonial for two years. (*Id.* ¶¶ 75, 87.) Gorbach also wired $50,000 to Navahrutski as a payment to IS Trucking for an Option Agreement to buy trucks. (*Id.* ¶¶ 76–85.)

After August 18, 2021, Katserman and Gorbach stopped communicating with Navahrutski and stopped making lease payments on the trucks being used for Colonial and NLN. (*Id.* ¶¶ 88–89.) "Navahrutski learned that Katserman and Gorbach, individually and through their entities[,] received at least [$3,300,000] for Colonial and NLN," thereafter demanded his share, but then "agreed to accept an additional [$300,000] from Katserman and Gorbach, together with their purchase of the trucks pursuant to the Option Agreement." (*Id.* ¶¶ 90–91.) Katserman and Gorbach stopped responding to Navahrutski and made no further payment, despite demands made by Navahrutski and his cancellation of the truck leases. (*Id.* ¶¶ 92–96.) Navahrutski received the trucks back, but they needed approximately $30,000 in repairs, and Colonial and NLN additionally owed approximately $80,000 for unpaid leases. (*Id.* ¶¶ 97–99.)

Navahrutski finally offered to accept $150,000 to settle the debt, but Gorbach refused the offer. (*Id.* ¶¶ 106–07.)

5

B. Procedural History

On September 3, 2021, Katserman and Gorbach filed a Complaint in which they assert claims against Navahrutski for Defamation (Count I), Commercial Disparagement (Count II), Tortious and Intentional Interference with Prospective Economic Advantage (Count III), and Tortious and Intentional Interference with Existing Contracts. (*See* D.E. 1.)

On September 14, 2021, Katserman and Gorbach, filed an Emergency Application for a Temporary Restraining Order and Preliminary Injunction ("TRO") against Navahrutski. (*See* D.E. 3.) On September 24, 2021, this Court issued an Order to Show Cause ("OSC"), granting the Temporary Restraining Order and directing Navahrutski to Show Cause. (*See* D.E. 8.) On October 4, 2021, the parties entered a Stipulated Order for the issuance of a Preliminary Injunction and TRO, to resolve the pending September 24, 2021 OSC. (*See* D.E. 12.)

Navahrutski filed an Answer, a Third-party Complaint ("TPC") against Colonial Valley, UA, NLN, Gorbach Trucking, and a Counterclaim against Gorbach and Katserman on October 22, 2021. (*See* D.E. 15.) In the TPC and Counterclaim, Navahrutski and/or IS Trucking seek damages related to the following claims: Breach of Contract (Count I, Navahrutski v. Katserman); Unjust Enrichment, in the alternative (Count II, Navahrutski v. Katserman); Unjust Enrichment (Count III, Navahrutski v. Colonial, BFX, and NLN); Conversion (Count IV, Navahrutski v. Katserman, Gorbach, Colonial, NLN, BFX, Gorbach Trucking, and UA); Civil Conspiracy (Count V, Navahrutski v. Katserman, Gorbach, Colonial, NLN, BFX, Gorbach Trucking, and UA); Breach of Contract (Count VI, Navahrutski v. Gorbach); Unjust Enrichment, in the alternative (Count VII, Navahrutski v. Gorbach); Breach of Contract (Count VIII, IS Trucking v. Colonial and NLN); Unjust Enrichment, in the alternative (Count IX, IS Trucking v. Colonial and NLN). (D.E. 15 ¶¶ 126–215.) Navahrutski and IS Trucking also seek a Declaratory Judgment (Count X, Navahrutski

6

and IS Trucking v. Gorbach and Gorbach Trucking); Request for Accounting (Count XI, Navahrutski v. Colonial and NLN); and Equitable Relief, Constructive Trust/Appointment of Receiver (Count XII, Navahrutski v. Katserman, Gorbach, Colonial, NLN, BFX, Gorbach Trucking, and UA). (D.E. 15 ¶¶ 216–41.)

On January 14, 2022, Katserman filed the instant Motion to Dismiss,[2] (*see* D.E. 36), and on January 24, 2022, Gorbach filed the instant Motion to Dismiss, (D.E. 42.) Thereafter, the parties completed timely briefing. (*See* D.E. 43, 44, 45.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

"Rule 14(a) provides in pertinent part that 'a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.'" *Fed. Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994).

---

[2] Katersman's brief, (D.E. 36), did not contain a table of contents and a table of authorities. *See* L.CIV.R. 7.2 (b)–(d). Counsel is cautioned going forward to comport with this Court's requirements for the formatting of briefs.

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION[3]

#### A. Rule 14(a) and Rule 24

This Court must first address the contentions by Gorbach and Third-party Defendants that Navahrutski's and IS Trucking's third-party claims should be dismissed pursuant to Rule 14(a), and that IS Trucking did not comport with Rule 24. (*See* D.E. 42-1 at 8–10; D.E. 45 at 3–5.) "[F]or a third-party claim to be valid, there must be a basis for liability between the third-party defendant and the defendant/third-party plaintiff." *Apple Am. Grp., LLC v. GBC Design, Inc.*, 294

---

[3] Regarding choice of law, the parties agree that New Jersey law will be applied to the claims at issue in the instant Motion. (*See* D. E 15 ¶¶ 2–3; D.E. 36-1 at 6–8; D.E. 44 at 8; D.E. 42-1 at 8–20 (analyzing claims under New Jersey law).)

F. Supp. 3d 414, 420 (W.D. Pa. 2018) (quoting *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 492 (W.D. Pa. 2016)).  Importantly, under Rule 14(a), "[a] third-party claim may be asserted . . . only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant.  If the claim is separate or independent from the main action, impleader will be denied." *Colony Ins. Co. v. Kwasnik, Kanowitz & Assocs., P.C.*, 288 F.R.D. 340, 345 (D.N.J. 2012) (quoting *Fed. Deposit Ins. Corp.*, 27 F.3d at 873).

Here, Navahrutski's claims as pleaded relate sufficiently to Katserman's and Gorbach's Complaint.  The original Complaint pertains to Navahrutski allegedly "ma[king] defamatory and threatening statements to and toward Plaintiffs Katserman and Gorbach and further attempt[ing] to interfere with Plaintiffs' contractual relationships . . . ." (D.E. 1 ¶ 6.)  The Complaint further specifies that the parties "are all connected through the ownership, former ownership, management, operation, and/or affiliation with FedEx delivery [Runs]." (*Id.* ¶ 7.)  The Complaint further details complicatedly intertwined business workings between the parties, and the transfer of $300,000 from Katserman and Gorbach to Navahrutski as a "reward . . . for his cooperation and help over the years." (*Id.* ¶¶ 6–12.)

Navahrutski's pleadings, on the other hand, continuously and consistently assert that the third-party claims rest squarely on the purported contractual relationship and business dealings between the parties that prompted the $300,000 transfer of funds. (*See* D.E. 15 ¶¶ 18–241.)  At this juncture in the litigation, this Court views the claims as related, and it is possible that the Third-party Defendants' "liability is in some way dependent on the outcome of the main claim," or that the Third-party Defendants are "secondarily liable to" Navahrutski. *Colony Ins. Co.*, 288

F.R.D. at 345 (quoting *Fed. Deposit Ins. Corp.*, 27 F.3d at 873).  This Court, therefore, declines to dismiss the claims pursuant to Rule 14(a).

Additionally, IS Trucking asserts claims against Colonial, NLN, Gorbach, and Gorbach Trucking.  However, IS Trucking did not file a motion to intervene, in accordance with Rule 24.  *See* FED. R. CIV. P. 24.  Rule 24 provides that parties may only intervene "[o]n timely motion." *Id.*  IS Trucking made no such motion, thus on procedural grounds this Court dismisses Count VIII, Count IX, and Count X (as to IS Trucking only).

B.  <u>Breach of Contract Claims (Counts I and VI)</u>

Under New Jersey law, a valid contract exists where there is:  "1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms." *Grossman v. Parking Auth. of City of Camden*, No. 12-3097, 2013 WL 1144830, at *3 (D.N.J. Mar. 18, 2013).  Reasonably certain contract terms do not require that "each term must be exactly spelled out" provided the court "can determine the contracts 'essential terms' to which the parties manifested an intent to be bound . . ." *Lo Bosco v. Kure Eng'g, Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995).  To establish a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).

Katserman submits that the oral agreement at issue in this matter is governed by the Uniform Commercial Code, as adopted by New Jersey, and the Statute of Frauds.  (*See* D.E. 36-1 at 9–11.)  At issue, according to Katserman, is a sale of a "good," and any sale of a good requires a writing when the contract price exceeds $500.  (*Id.* (citing N.J. STAT. ANN. § 12A:2-201).)

10

Katserman alleges that the Runs, ownership interest, proceeds from the Runs and sale of the Runs were all goods. (*Id.*). This allegation misinterprets the definition of a good, per the statute, and disregards significant portions of Navahrutski's claims. "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." N.J. STAT. ANN. § 12A:2-105. That definition does not apply to the interests at issue in the oral agreement, as the agreement pertained to Navahrutski's and Katserman's purchase of Runs and shares of profits and proceeds—interests that are decidedly not "goods.". (*See* D.E. 15 ¶¶ 126–36.)

Gorbach contends that Navahrutski's claim for breach of contract is barred by the Statute of Frauds, and the purported contract does not contain essential terms. (*See* D.E. 42-1 at 15–17; D.E. 45 at 9–11.) An oral agreement may be subject to the Statute of Frauds, which provides in relevant part that an oral agreement "shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized" when the agreement concerns

> [a] contract, promise, undertaking or commitment to loan money or to grant, extend or renew credit, in an amount greater than $100,000, not primarily for personal, family or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit. . . .

N.J. STAT. ANN. § 25:1-5(f).

Here, Navahrutski claims that he loaned money to Gorbach, and that Gorbach promised to, but ultimately failed to, repay the money. (*See* D.E. 15 ¶¶ 185–90.) For the Statute of Frauds to apply, Navahrutski's loan would have to be categorized not as a personal loan (to which the Statute of Frauds does not apply), but rather as a loan put forth by "a person engaged in the business of

lending or arranging for the lending of money or extending credit." (*See* D.E. 42-1 at 15; D.E. 45 at 9–10; *see also* N.J. STAT. ANN. § 25:1-5(f).)  Viewing Navahrutski's claim in a favorable light does not definitively lead to that result; at this premature stage of the litigation, additional information is needed to determine whether the monies loaned to Gorbach were of a personal nature or whether Navahrutski was acting as a person engaged in such lending.  Navahrutski is neither in the trucking business, nor in the business of banking, so it is not evident that he is involved in money lending in a professional capacity.

Additionally, Navahrutski claims that an oral agreement formed (meeting of the minds, offer and acceptance) during which he loaned monies to Gorbach (valid consideration), and that Gorbach promised to repay the money in several weeks (reasonably certain contract terms).  *See Grossman*, 2013 WL 1144830, at *3.  While each, specific term of the purported oral agreement has not been explicitly delineated at this juncture, the pleading has sketched out the essential elements of an oral agreement.  *See Lo Bosco*, 891 F. Supp. at 1025.  Consequently, Navahrutski has pleaded Counts I and VI adequately.  These claims may therefore proceed, and dismissal is denied.

### C.  Unjust Enrichment Claims (Count II, Count III, Count VI)

Navahrutski has sufficiently alleged claims for unjust enrichment at this stage of the proceedings.  Unjust enrichment is an equitable cause of action that imposes liability when a "defendant received a benefit and . . . retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted).  "To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that '(1) at plaintiff[']s expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'"  *Gov't Emps. Ins. Co. v. Ningning He, M.D.*,

No. 19-9465, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (quoting *Arlandson*, 792 F. Supp. 2d at 711).

Here, Navahrutski has pleaded in the alternative to Count I that Katserman received benefits including assets, profits, and revenue at Navahrutski's expense, and that it would be unjust for Katserman to retain those benefits "without paying fair market value." (D.E. 15 ¶¶ 139–46.) The pleading satisfies all three criteria of an unjust enrichment claim in the alternative to the breach of contract claim.

Navahrutski has also pleaded that Colonial, BFX, and NLN have received, at his expense, assets in the form of the Runs, and that it would be unjust for the companies to retain those benefits "without paying fair market value to Navahrutski for his contributions." (*Id.* ¶¶ 151–57.) The pleading satisfies the criteria of an unjust enrichment claim.

Finally, Navahrutski has pleaded in the alternative to Count VI that Gorbach received monies in the form of loans at Navahrutski's expense, and that it would be unjust for Gorbach to retain those monies without payment of fair value to Navahrutski. (*Id.* ¶¶ 192–96.) The pleading satisfies the criteria of an unjust enrichment claim in the alternative to the breach of contract claim. In sum, Navahrutski has pleaded Counts II, III, and VII adequately. Dismissal of these claims is denied.

### D. Conversion Claim (Count IV)

The tort of conversion is the "'unauthorized' exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's right." *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 466–67 (3d Cir. 2019) (citing *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1164–65 (N.J. Super. Ct. App. Div. 1988)). "[T]o sustain a cause of action for conversion, [a plaintiff] must demonstrate that: (1) 'the property and right to immediate possession thereof belong to the plaintiff'; and (2) 'the wrongful act of

interference with that right by the defendant.'" *Liberty Bell Temple III v. Trenton City Police Dep't*, No. 16-1339, 2019 WL 4750836, at *25 (D.N.J. Sept. 30, 2019) (quoting *First Nat'l Bank v. North Jersey Trust Co.*, 14 A.2d 765, 767 (1940)). When money is at issue in a conversion claim, "[t]he plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit." *Cambridge Mgmt. Grp., LLC v. Robert A. Kosseff & Assocs., P.C.*, No. 05–3402, 2007 WL 2084895, at *3 (D.N.J. July 18, 2007) (citations omitted). Furthermore, "for wrongful interference to be demonstrated, a plaintiff must have demand[ed] return of his alleged property, and the demand must have been refused by the defendant." *Berk v. HMC*, No. 07–181, 2009 WL 467849, at *5 (D.N.J. Feb. 24, 2009) (citing *Mueller v. Technical Devices Corp.*, 84 A.2d 620, 623 (N.J.1951)).

Here, Navahrutski claims that Katserman, Gorbach, Colonial, NLN, BFX, Gorbach Trucking, and UA converted assets, Runs, and money that were rightfully his into their own use or distributed the assets, Runs, and money to other "individuals and entities." (D.E. 15 ¶¶ 161–65.) Navahrutski pleads that the assets totaling $1,750,000 belong to him, but "[d]espite countless requests for the return of the [Runs], interests in Colonial/NLN, and/or proceeds from the sale thereof," he has only been partially compensated. (*Id.* ¶¶ 166–67.) Navahrutski further claims that the parties attempted to conceal specific funds he was entitled to receive, continue to possess specific Runs that belong to him, and continue to receive specific revenue for which he is entitled to a share, thereby "depriv[ing] him of both the assets and the monies paid for the assets." (*Id.* ¶¶ 168–73.) Viewing this claim in a light favorable to Navahrutski, it is inappropriate to dismiss the claim at this stage because he sufficiently pleads the elements of a conversion claim—the property belonged to him and defendant interfered with his right to it, *see Liberty Bell Temple III*, 2019 WL

14

4750836, at *25 (quoting *First Nat'l Bank*, 14 A.2d at 767), and sufficiently demonstrates that he made demands for the property he alleges belongs to him—demands that were refused, *Berk*, 2009 WL 467849, at *5 (citing *Mueller*, 84 A.2d at 623). Therefore, this claim may proceed as pleaded.

    E.  <u>Civil Conspiracy Claim (Count V)</u>

"Under New Jersey law, '[a] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *United Assoc. of Plumbers & Pipefitters Local 322 of S. N. J. v. Mallinckrodt ARD, LLC*, No. 20-188, 2020 WL 5627149, at *20 (D.N.J. Aug. 18, 2020) (quoting *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)). A civil conspiracy claim must "be predicated upon an underlying tort that would be independently actionable against a single defendant." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999).

Here, Navahrutski claims that Katserman, Gorbach, Colonial, NLN, BFX, Gorbach Trucking, and UA conspired "with a common purpose to unlawfully obtain and retain money and assets belonging, at least in part, to [him]"; "unlawfully deprived [him] of funds and assets that belonged to him"; and "refused to return [his] portion of the funds, . . . portion of the assets[,] . . . or the value of the assets." (D.E. 15 ¶¶ 177–80.) Navahrutski's claim satisfies the elements of civil conspiracy because it specifies two or more persons—Katserman, Gorbach, and the Third-party Defendants; it alleges action in concert to commit an unlawful act—depriving him of property and assets that belong to him; and it alleges an overt act—retention of money and assets that belong to him, despite his requests for return of the funds. *See United Assoc. of Plumbers & Pipefitters Local 322 of S. N. J.*, 2020 WL 5627149, at *20 (quoting *Morgan*, 633 A.2d at 998). Navahrutski's conversion claim

may form the underlying tort that may be independently actionable against Katserman, Gorbach, or each Third-party Defendant. Viewing the claim in a light favorable to Navahrutski, dismissal is not appropriate.

F. Declaratory Judgment Claim (Count X)

In Count X, Navahrutski seeks a declaratory judgment against Gorbach and Gorbach Trucking "declaring that if [Gorbach Trucking] has not purchased the trucks pursuant to the Option Agreement on or before November 1, 2021, Gorbach Trucking has forfeited its [$50,000] deposit pursuant to the Option Agreement, together [with] any other remedies this Court deems equitable and just." (D.E. 15 ¶ 223.)

The Declaratory Judgment Act ("DJA") provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). To determine whether a justiciable controversy exists under the DJA, a court must consider whether: (1) the parties "have adverse legal interests"; (2) the facts are "sufficiently concrete to allow for a conclusive legal judgment"; and (3) the judgment would be "useful to the parties." *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (citing *In Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)); *see also Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (noting that a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 350–51 (3d Cir. 1986). Adversity of interest requires a court to find "a substantial threat of real harm . . . [that] remain[s] 'real and immediate' throughout the course of the litigation." *Presbytery of N.J. of Orthodox Presbyterian*

16

*Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Salvation Army v. Dep't of Cmty. Affs.*, 919 F.2d 183, 192 (3d Cir. 1990)); *see also Surrick*, 449 F.3d at 527 (noting that the party seeking a declaratory judgment need not have "suffered a completed harm"). Conclusiveness requires a court to determine whether "judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts." *Presbytery of N.J. of Orthodox Presbyterian Church*, 40 F.3d at 1468 (citing *Step-Saver Data Sys., Inc.*, 912 F.2d at 649 n.9). The "conflict between the parties . . . cannot be 'nebulous or contingent,'" it "must have taken on fixed and final shape so that a court can see what legal issues it is deciding. . . ." *Wyatt, V.I., Inc. v. Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)). Usefulness requires a court to look to "whether the parties' plans of actions are likely to be affected by a declaratory judgment." *Presbytery of N.J. of Orthodox Presbyterian Church*, 40 F.3d at 1469 (quoting *Step-Saver Data Sys., Inc.*, 912 F.2d at 649 n.9).

Here, a declaratory judgment is largely dependent upon a factual issue: whether Navahrutski and Gorbach and/or Gorbach Trucking had a valid contract—an Option Agreement—for Gorbach and/or Gorbach Trucking to purchase trucks from Navahrutski. Navahrutski is seeking to have this Court declare that a valid contract existed, and that the $50,000 Gorbach transferred to him was a deposit for the option to buy trucks—a deposit that Gorbach and Gorbach Trucking has forfeited. (*See* D.E. 15 ¶ 223.) Viewing the claim in a light favorable to Navahrutski, it is evident that the parties have adverse interests, considering a sum of $50,000 is at stake and each has an interest in securing those funds; the contract either exists and is actionable or does not exist and the money must be returned, thus a conclusive legal judgment can be rendered; and resolving this issue would be "useful to the parties," considering there is a sum of money due to one litigant or the other. *Surrick*, 449 F.3d at 527 (citing *In Step-Saver Data Sys., Inc.*, 912 F.2d

at 647). At this early stage in the matter, a factual issue remains regarding the validity of the contract; thus, dismissal would be premature.

G. Request for Accounting (Count XI)

In Count XI, Navahrutski requests that this Court order the equitable remedy of an accounting from Colonial and NLN, so that he may learn the "location and correct amounts of funds . . . ." (D.E. 15 ¶¶ 225–29.) "In New Jersey, '[t]he equitable jurisdiction to compel an account, rests upon three grounds—first, the existence of a fiduciary or trust relation; second, the complicated character of the accounts; and third, the need of discovery.'" *Rainbow Apparel, Inc. v. KCC Trading, Inc.*, No. 9-05319, 2010 WL 2179146, at * 6 (D.N.J. May 26, 2010) (alteration in original) (quoting *Burdick v. Grimshaw*, 168 A. 186, 191 (N.J. Ch. 1933). Importantly, "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Id.* (second alteration in original) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)).

Here, Navahrutski has pleaded that there is a fiduciary or trust relationship between the parties because they allegedly entered a business partnership that involved co-mingling of funds and co-ownership of assets, which occurred in a complex series of transactions involving multiple parties and accounts. (*See* D.E. 15 ¶¶ 24–108; ¶¶ 225–28.) It is premature to determine whether discovery will yield the information necessary to track the funds and assets involved with these transactions, or whether an accounting is required. Dismissal, therefore, is inappropriate at this stage.

H. Equitable Relief—Constructive Trust / Appointment of Receiver (Count XII)

Per New Jersey law, a constructive trust is an equitably remedy "impressed in any case where to fail to do so will result in an unjust enrichment." *D'Ippolito v. Castoro*, 242 A.2d 617, 619 (N.J. 1968) (citing *Clark v. Judge*, 200 A.2d 801, 815 (N.J. Ch. 1964) *aff'd o.b.* 210 A.2d

415 (1965); 5 BOGERT, LAW OF TRUSTS AND TRUSTEES § 472, p. 10 (2d ed. 1965); SCOTT ON TRUSTS § 462.1, p. 3417 (3d ed. 1967)).  While, in certain circumstances, a constructive trust may arise from property not wrongfully obtained, "[g]enerally all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property." *Id.*

Here, this Court cannot determine whether a constructive trust is appropriate because Navahrutski has improperly pleaded his request for a constructive trust as an independent cause of action.  A constructive trust is a remedy.  This Count is therefore dismissed without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff/Counterclaim Defendant Natan Katserman and Joinderclaim Defendant NLN Trucking, Inc.'s Motion to Dismiss, (D.E. 36), is **GRANTED** as to Count VIII, Count IX, and Count X (as to IS Trucking's claim only), and Count XII, and **DENIED** as to all other Counts; and Plaintiff/Counterclaim Defendant Igor Gorbach and Third-Party Defendants UA Logistics, Inc. and Gorbach Trucking, Inc.'s Motion to Dismiss, (D.E. 42), is **GRANTED** as to Count X (as to IS Trucking's claim only), and Count XII, and **DENIED** as to all other Counts.  An appropriate order follows.

                                                                                                                                                /s/ Susan D. Wigenton
                                                                                               **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Michael A. Hammer, U.S.M.J.
              Parties